Pennsylvania Funeral Directors Association, By Its Officers and J. Clark Feiser, Baron Rowland, Harvey L. Corba, and James E. Humphrey, in their own right, Petitioners v. Commonwealth of Pennsylvania, State Board of Funeral Directors, Respondents.

Argued May 13, 1985, before Judge DOYLE.

176

*J. Scott Calkins,* with him, *Loudon L. Campbell, Calkins & Campbell,* for petitioners.

*Calvin R. Koons,* Deputy Attorney General, with him, *Allen C. Warshaw,* Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

*Gary L. James, Yost, Davidson & James,* for intervenors, Pennsylvania Pre-Need Association and Graham S. Hetrick.

*James O. Hausch, LaBrum and Doak,* for intervenor, John F. Givnish, Inc.

OPINION AND ORDER BY JUDGE DOYLE, June 18, 1985:

The present action for a declaratory judgment comes before us in our original jurisdiction pursuant to Section 761(a)(1) of the Judicial Code, 42 Pa. C. S. §761(a)(1), and seeks relief pursuant to Section 7532 of the Declaratory Judgments Act, 42 Pa. C. S. §7532. The Pennsylvania Funeral Directors Association (Plaintiffs) seek, by way of a motion for summary judgment, a declaratory judgment determining the applicability of two seemingly conflicting statutes to funeral directors. Plaintiffs are an association and representative members of the association who are

licensees of the State Board of Funeral Directors (State Board). The State Board is the principal defendant.[1] The case at bar involves a determination of what percentage of funds collected by funeral directors from consumers who enter into pre-need, prefinanced contracts with them for the sale of funeral services (and merchandise incident to such services) must be placed in escrow.

Section 13(c) of the Funeral Director Law, Act of January 14, (1951), P.L. 1898, *as amended,* 63 P.S. §479.13(c),[2] requires *all* such receipts to be escrowed, and provides in pertinent part:

No person other than a licensed funeral director shall, directly or indirectly, or through an agent, offer to or enter into a contract with a living person *to render funeral services* to such person when needed. If any such licensed funeral director shall accept *any money* for such contracts, he shall, forthwith, either deposit the same in an escrow account in, or transfer the same in trust to, a banking institution in this Commonwealth, conditioned upon its withdrawal or disbursement only for the purposes for which such money was accepted. (Emphasis added.)

---

[1] There are various intervenors on the side of the State Board in this case. First Valley Bank is a depository of trust funds of funeral directors and has created a Future Interment Master Trust; it has permitted participating funeral directors to withdraw thirty per cent of the trust funds deposited in the Master Trust in reliance upon the State Board's position that such withdrawal is statutorily permitted. The Pennsylvania Pre-Need Association, a non-profit corporation of Pennsylvania Funeral Directors who seek to encourage pre-need contracts has also intervened on the side of the State Board. Also intervening on behalf of the State Board's position is John F. Givnish, Inc., a Pennsylvania corporation licensed by the State Board.

[2] Section 13(c) was added by Section 2 of the Act of July 25, 1953, P.L. 592.

Definitionally, under Section 2 of the Funeral Director Law, 63 P.S. §479.2(1), the term "funeral director" includes:

[A]ny person engaged in the profession of a funeral director or in the care and disposition of the human dead, or in the practice of disinfecting and preparing by embalming the human dead for the funeral service, burial or cremation, or the supervising of the burial, transportation or disposal of deceased human bodies, or in the practice of funeral directing or embalming as presently known, whether under these titles or designation or otherwise. The term "funeral director" shall also mean a person who makes arrangements for funeral service and who sells funeral merchandise to the public incidental to such service or who makes financial arrangements for the rendering of such services and the sale of such merchandise.

In 1963 the legislature enacted the Act of August 14, 1963, P.L. 1059, 63 P.S. §§480.1-480.11, (commonly referred to as the Future Interment Law). This Act requires that only *seventy percent* of pre-need funds be placed in escrow. Section 1 of the Future Interment Law, 63 P.S. 480.1, provides:

Except as hereinafter provided, no person shall, directly or indirectly or through an agent, offer to enter into a contract for the sale of personal property or for the furnishing of personal services to be used *in connection with the interment* of a deceased human being wherein the personal property is not to be delivered or the personal services are not be performed until the death at some future time of the person for whose interment such property or services are to be furnished. (Emphasis added.)

Section 2(a) of the Future Interment Law, 63 P.S. §480.2(a), states:

> Any person entering into any such contract as the seller shall deposit into a merchandise trust fund, established for that purpose with a banking institution in the Commonwealth authorized to perform trust functions, as trustee of such fund, *seventy per cent* of the retail sale price of the personal property of personal services so sold for future need. (Emphasis added.)

Additionally, Section 11 of the Future Interment Law, 63 P.S. §480.11, expressly provides:

> The provisions of this act shall not be construed to repeal or affect the provisions of section 13 of the act of January 14, 1952 (P.L. 1898), known as the "Funeral Director Law."

In light of the foregoing statutes the question simply put is: what percentage of funds collected by funeral directors must be held in escrow; one hundred percent under the Funeral Director Law, or seventy percent under the Future Interment Law. Plaintiffs take the position that the seventy percent provision in Section 2(a) of the Future Interment Law does not affect the requirement under Section 13(c) of the Funeral Director Law that funeral directors must deposit in escrow *"any money"* received under a pre-need, pre-financed contract for funeral services and merchandise incidental thereto.

The State Board and Intervenors maintain that the provisions of the Future Interment Law apply to funeral directors as well as to others involved in the industry *i.e.*, cemeteries and crematoriums etc. Accordingly, they argue that under the more recent statute (the Future Interment Law) funeral directors need deposit in escrow only seventy percent of funds collected in connection with pre-need, pre-financed contracts.

A motion for summary judgment is only proper when a case is free from doubt; that is, when the moving party has established that there is no genuine issue of a material fact and that it is entitled to judgment as a matter of law. *Commonwealth v. Hilton*, 78 Pa. Commonwealth Ct. 629, 468 A.2d 1160 (1983). It is clear from the pleadings and affidavits that the question to be decided here is purely one of statutory construction. Although there are allegations of fact which the State Board and Intervenors dispute,[3] these allegations are irrelevant for our purposes because they do not affect how the statutes at issue should be read.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921 (a)(1). In ascertaining whether the legislature intended the trust provisions of the Future Interment Law to apply to funeral directors a review of the legislative history of the bill is proper, *see* 1 Pa. C. S. §1921 (c)(7), and in this instance very helpful. The original House Bill 1065 (Printer's No. 1197) when referred to committee was entitled:

---

[3] The allegations in dispute pertain to whether the State Board prior to 1982, had taken the position that one hundred percent of the funds collected by funeral directors for pre-need, pre-financed funeral services and incidentals for such services had to be placed in escrow.

In light of the fact that the Future Interment Law has been the law since 1963, it is necessary to explain why the present action arises more than twenty years subsequent to its enactment. As just noted, in 1982 the State Board took the position that only seventy per cent of the funds collected by funeral directors in connection with pre-need contracts were required to be placed in escrow. Prior to this, the State Board apparently had made no specific policy pronouncement. Accordingly it was their announced position which triggered the present controversy.

> An Act—Regulating moneys paid in advance of need *to funeral directors* cemeteries or other persons associations partnerships or corporations in connection with agreements for sale of personal property or rendering of personal service in connection with a funeral or burial and fixing penalties. (Emphasis added.)

This title was changed when the Bill was reported from committee (Printer's No. 2075) on July 15, 1963 to the following:

> An Act—Prohibiting future need sales of cemetery merchandise and services funeral merchandise and services except under certain conditions requiring the establishment of and deposit into a merchandise trust fund of certain amount of the proceeds of any such sale providing for the administration of such trust funds and the payment of money therefrom conferring powers and imposing duties on orphans courts and prescribing penalties.

Conspicuous by its absence from the amended title is the term "funeral director." Although the title mentions funeral merchandise and services, such merchandise and services could be provided and performed by vendors. For example, the sale and delivery of flowers could be performed by a floral shop. In short, nothing in the amended title indicates that the Future Interment Law is to be broadly applied to funeral directors.

Next, an examination of Section 1 of the bill reveals that from the time it left committee until its third reading in the Senate (Printer's No. 2432) it provided that:

> Except as hereinafter provided no person shall directly or indirectly or through an agent offer to enter into or enter into a contract for the sale of personal property or for the furnishing of

personal services to be used in connection with the *funeral or burial* of a deceased human being wherein the personal property is not to be delivered or the personal services are not to be performed until the death at some future time of the person for whose funeral or burial such property or services are to be furnished. (Emphasis added.)

The words "funeral or burial" were later deleted and the word "interment" added in their place. We note that nothing in the definition of "funeral director" indicates that funeral directors actually *inter* the deceased. Rather, a fair reading of the definition indicates that funeral directors *prepare* the dead for interment and witness the interment. Recognizing this distinction, we again find an indication that the legislature was limiting the Future Interment Law's application to the furnishing of services in connection with interment. As noted above funeral directors do prepare bodies for interment and do witness, via a representative, interment, 49 Pa. Code §13.215, and thus an argument can be made that they perform services *in connection with* interment. But, in our view, the legislature's deletion of the terms "funeral" and "burial" which terms are the statutory ones utilized in the definition of "funeral directors," discloses an intent to curtail the Future Interment Law's applicability to funeral directors. In summary, the legislature made a conscious choice first to excise the term "funeral director" from the title and then to excise the phrase "funeral or burial" from Section 1. We view this as an indication that the legislature desired to limit the Future Interment Law's applicability to funeral directors.[4]

---

[4] We do not hold that the Future Interment Law is entirely inapplicable to funeral directors. Indeed, we note that Section 8, (pertaining to the sale of cemetery lots) specifically mentions funeral directors, as does Section 3.

The bill's history further reveals that the legislature consciously considered what percent of funds should be placed in trust. Initially, the committee draft provided that "any and all moneys" paid for pre-need services were to be placed in trust. But when the bill was reported from committee the figure was changed to seventy-five percent and this change appeared at the very same time as the deletion of the term "funeral director" from the title of the bill. Upon third reading in the House (Printer's No. 2373) the bill was amended to read "any and all moneys;" but upon second reading in the Senate (Printer's No. 2429) the provision relating to the amount to be placed in trust was again changed, this time to seventy percent. Then, significantly, the very next day upon third reading in the Senate, Section 11, which expressly saves Section 13 of the Funeral Director Law from repeal, was added. It is thus apparent that when the legislature considered the percentage of funds which were to be placed in trust under the Future Interment Act, it recognized the distinction in amounts between the Future Interment Act and the Funeral Director Law, and it specifically provided that the one hundred percent trust provision in the Funeral Director Law would continue to apply to funeral directors. Moreover, it is certainly significant that on two occasions in the bill's legislative passage when the trust fund percentages were deliberately changed, there was a correspondingly clear legislative action and change differentiating funeral directors.

A question has been raised as to whether the one hundred percent provision applies only to services of the funeral directors or also to incidentals to those services. We believe that the legislature intended that the one hundred percent trust requirement should apply not only to the pre-need services but also to the incidentals to such services when supplied by funeral

directors. Clearly the definition of "funeral directors" encompasses the sale of such incidentals. Accordingly, we agree with Plaintiffs' statement that "[t]here is no reasonable explanation justifying any distinction which would result in a funeral director being required to place 100% of funds received on pre-need contracts for funeral services, [in escrow] but no requirement to place [in escrow] 100% of pre-need funds received which represent payments toward pre-need sales of incidental funeral merchandise." Plaintiffs' brief, page 18.

The State Board and Intervenors maintain that certain items such as burial vaults are sold by persons other than funeral directors and thus, at least with respect to such items, the trust requirements should be the same as those applicable to funeral directors. The legislature has decided, however, to subject funeral directors to a greater trust requirement (admittedly without articulating why). We note that funeral directing is a heavily regulated industry subject to strict licensing provisions including the acquisition of a certificate of mortuary education, see 49 Pa. Code §13.11 and §13.32. We may thus surmise that the legislature may have believed that the public's perception of funeral directors as licensed professionals necessitated stricter standards to protect consumers. Assuming this supposition to be correct, we can not say that such a belief is arbitrary or irrational;[5] holding professionals to standards higher than those imposed upon the general public is not uncommon in the law.[6]

[5] To withstand an equal protection challenge to a non-suspect class a law need only be rational and not arbitrary. *Rabino v. State Registration Board of Professional Engineers*, 69 Pa. Commonwealth Ct. 191, 450 A.2d 713 (1982).

[6] Intervenor, First Valley Bank, argues that the one hundred percent trust requirement of Section 13(c) of the Funeral Director Law does not require the banking institution to serve as trustee. *See also* 49 Pa. Code §13.224(a) which states in pertinent part:

Based upon the foregoing, we grant Plaintiffs' motion for summary judgment and hold that, as a matter of law, Section 2 of the Future Interment Law did not abrogate the one hundred percent trust requirement in Section 13(c) of the Funeral Director Law and accordingly hold that funeral directors are required to place in escrow one hundred percent of the funds received for the sale of pre-need, pre-financed funeral services and merchandise incidental to such services.

### ORDER

AND Now, this 18th day of June, 1985, Plaintiffs' motion for summary judgment in the above captioned matter is hereby granted; Section 13(c) of the Funeral Director Law mandates that one hundred percent of funds collected by funeral directors for preneed services and incidentals be placed in escrow or trust.

---

Each funeral director shall forward to the Board an annual report including every prearranged burial account opened during the previous year where any money or any other funding is received or deposited as part of the prearrangement and such funds shall be accessible to and controlled by the funeral director.

This regulation does not, however, obviate the statutory mandate that all funds collected must be placed in trust and that they cannot be withdrawn except for the purposes for which they were accepted. Intervenor, Pennsylvania Pre-Need Association, expresses doubts about the effectiveness of this self-policing. But such fears, even if realistic, are for the legislature, not this Court, to remedy. We note that the escrow funds held by real estate brokers are treated in a similar fashion. See Section 604 of the Real Estate Licensing and Registration Act, Act of February 19, 1980, P.L. 15, as amended, 63 P.S. §455.604(1) (iv) ; 49 Pa. Code §35.127(b).