578 A.2d 545

**John F. GIVNISH, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, STATE BOARD OF FUNERAL DIRECTORS, Respondent.**

Commonwealth Court of Pennsylvania.

Sept. 12, 1989.

Argued May 2, 1990.

Decided July 20, 1990.

148

James O. Hausch, with him, Daniel J. Ryan and Laurie A. Zaveta, LaBrum and Doak, Philadelphia, for petitioner.

Jackie Wiest Lutz, State Bd. of Funeral Directors, with her, Joyce McKeever, Chief Counsel, Bureau of Professional and Occupational Affairs, and Velma Z. Boozer, Chief Counsel, Dept. of State, for respondent.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, COLINS, PALLADINO, SMITH and PELLEGRINI, JJ.

DOYLE, Judge.

By order of this Court dated February 21, 1990, we granted reconsideration of our decision in *Givnish v. State Board of Funeral Directors*, 1989 WL 149792 (No. 419 C.D.1989 filed December 11, 1989). In that decision we had reversed the order of the Board which had revoked the license of John Givnish (Petitioner) to practice as a funeral director and funeral supervisor and imposed a $1,000.00 fine upon him. Upon further reconsideration of the matter, we now affirm the Board's order in part and reverse in part.

Petitioner was a licensed funeral director and funeral supervisor in Pennsylvania and sold pre-arranged funeral service agreements for the Spencer T. Videon, Inc. Funeral Home (Videon). In early 1987 Videon sent out a "community safety program" mailer to approximately 60,000 residents in Delaware County, Pennsylvania. Attached to the mailer was a peel off sticker containing emergency tele-

phone numbers, *i.e.*, fire, police, rescue, poison. It also had a postage paid card which offered a free emergency record guide and medical alert card to residents choosing to complete the card and return it to Videon. Albert Nello, a recipient of the mailer, completed it and returned it to Videon in early May, 1987. Petitioner telephoned Mr. Nello to inform him that he had received his card and to inquire as to whether he could visit Mr. Nello's home to provide him with the information he had requested. Later, Petitioner met with Mr. Nello at his home and supplied him with a medical alert card and an emergency record guide. During this meeting Petitioner discussed pre-arranged funeral services with Mr. Nello. Petitioner explained that Videon's pre-arranged plan permitted a purchaser to pay the funeral costs in installments, without interest, while freezing the cost of the funeral at the time of signing the contract. Mr. Nello informed Petitioner that his family had always used the Williams Funeral Home. Petitioner suggested "[w]hy don't we do this. I'll give you about a month to check it out. Give me $10.00 to hold it ... Williams does not offer a program like ours. They have pre-arrangements. Every funeral home offers pre-arrangements, to the best of my knowledge ... Fill out the agreement and take it to them and show it to them." Board's Findings of Fact Nos. 13 and 14. During the same conversation, Petitioner stated to Mr. Nello that he understood that Mrs. Williams had died, and that the Williams Funeral Home may be for sale. Board's Findings of Fact No. 15. Mr. Nello then entered into a pre-arranged funeral service agreement with Videon and gave Petitioner $10.00 as a down payment to hold the agreement binding until he could compare it with the Williams plan.

The pre-printed agreement that Mr. Nello entered into with Videon is divided into two columns, each representing a separate agreement. Column A is entitled "Pre-arranged Funeral Service Agreement" (Agreement) and generally covers professional services of the funeral director and staff, use of the facilities and transportation charges. Col-

umn B is entitled "Pre-arranged Funeral Merchandise Agreement," which is not at issue in this matter.[1] A clause appears under the itemized charges in Column A in the Agreement immediately above the purchaser's signature line which states:

Thirty percent (30%) of the Total Purchase Price is Funeral Home's charge for consulting with Purchaser and arranging and coordinating the funeral plans into this Agreement (the 'Arrangement Fee').[2] *These services are rendered at or prior to the execution of this agreement* and the charge for same is non-refundable. (Emphasis added.)

Another clause contained in the Agreement states that all funds received pursuant to the Agreement with the exception of the "Arrangement Fee" will be placed in an escrow or trust account at a banking institution in this Commonwealth. Mr. Nello subsequently notified Videon that he wished to cancel the Agreement and received a refund check of his $10.00 down payment. Had Mr. Nello not cancelled the Agreement, Petitioner would have retained thirty percent of the total purchase price of Column A, *i.e.*, thirty percent of $1,760 or $528. The Board also found that Mr. Nello had not been shown the Agreement provision stating that thirty percent of the purchase price collected for arranging the funeral plans would not be placed in trust and that when Mr. Nello entered into the contract he believed that all of his money would be placed in a trust account. He also did not realize that if he had not cancelled

1. The Column B services could be provided by individuals or business entities who were not licensed funeral directors, such as, for example, florists. While funeral directors may be bound by contracts, the parameters of what they may contract for are limited by the Funeral Director Law, which imposes a more stringent trust requirement on them. Other individuals selling funeral merchandise are governed by the more liberal provisions of what is commonly known as the Future Interment Law, Act of August 14, 1963, P.L. 1059, 63 P.S. §§ 480.1– 480.11. Petitioner does not even contend that he may keep thirty percent of the monies attributable to the services in Column B. *See infra* n. 8.

2. The arrangement fee was $528.00 or 30% of the total purchase price of $1,760.00.

the Agreement he would have been charged for Petitioner's visit to his home.

On March 17, 1988, the Board filed an Order to Show Cause against Petitioner alleging that he violated Section 13.218 of the State Board of Funeral Directors regulations [3] by defaming another funeral director,[4] and Section 13(c) of the Funeral Director Law [5] because he had used a contract for pre-arranged funeral services which provided that 30% of the total purchase price for funeral services selected would be retained by the funeral home for consulting and arranging the funeral plans. Petitioner filed an answer to the Order to Show Cause denying the violations. Following a hearing, the Board issued an Adjudication and Order on February 7, 1989, in which it dismissed the defamation charge against Petitioner, finding that the Commonwealth had failed to satisfy its burden of proof. The Board, however, held that Petitioner had violated Section 13(c) of the Funeral Director Law. The Board revoked Petitioner's funeral director and funeral supervisor licenses and fined him $1,000. Petitioner filed an application for stay, which was granted by the Board by order dated March 20, 1989, pending the outcome of this appeal.

Section 13(c) pertinently provides:

No person other than a licensed funeral director shall, directly or indirectly, or through an agent, offer to or enter into a contract with a living person to render funeral services to such person when needed. If any such licensed funeral director shall accept *any* money for such contracts, he *shall,* forthwith, either deposit the same in an escrow account in, or transfer the same in trust to, a banking institution in this Commonwealth, conditioned upon its withdrawal or disbursement only for the purposes for which such money was accepted. This

3. 49 Pa.Code § 13.218.

4. This allegation was based upon the statements made to Mr. Nello regarding the Williams Funeral Home.

5. Act of January 14, 1952, P.L. 1898, *as amended,* 63 P.S. § 479.13(c). Section 13(c) was added by Section 2 of the Act of July 25, 1953, P.L. 592.

subsection does not apply to a contract by a bona fide institution that it will provide professional funeral services for persons who may die while inmates of the institution, if such contract is made as a part of its contract for housing, maintaining and caring for its inmates. (Emphasis added.)

In *Pennsylvania Funeral Directors Association v. State Board of Funeral Directors*, 90 Pa.Commonwealth Ct. 175, 494 A.2d 67 (1985), *aff'd per curiam*, 510 Pa. 602, 511 A.2d 763 (1986), this Court interpreted Section 13(c) to require that one hundred percent of the funds collected by funeral directors for pre-need services and merchandise incidental to such services be placed in trust. In so doing we rejected the notion that a seventy percent trusting requirement which appears in Section 2(a) of what is colloquially known as the Future Interment Law, Act of August 14, 1963, P.L. 1059, 63 P.S. § 480.2(a), applied to funeral directors. Further, we observed that the legislative intent to place a more stringent requirement with respect to placing funds in trust on funeral directors than upon others who deal in funeral-related merchandise is not unusual because licensed professionals are frequently held to higher standards of care.

In subsequent litigation our Court interpreted the one-hundred percent trusting requirement to be retroactive and directed the Board to enforce Section 13(c) as we had interpreted it. It is in the context of this history that the Board's actions must be examined.

 Before we do so, however, a preliminary matter demands attention. The Board has filed an application for relief in the nature of a motion to strike Petitioner's brief because it contains references to facts not of record in this case. We shall grant the motion insofar as Petitioners have submitted evidence of a pre-need contract involving another funeral home and a letter from the Federal Trade Commission, but deny the motion insofar as it seeks to preclude us from considering an order issued by the Independent Regulatory Review Commission and a regulation passed by the

Board itself subsequent to the decision in this case [6] inasmuch as we may take judicial notice of these two latter matters. *See Edelbrew Brewery, Inc. v. Weiss,* 170 Pa.Superior Ct. 34, 84 A.2d 371 (1951). Accordingly, those portions of Petitioner's brief referring to the Federal Trade Commission letter and the Mauger contract will be stricken and not considered by this Court in deciding the instant case.

We turn now to the merits. The Board has taken the position that all monies collected by a funeral director for pre-need services and incidentals thereto must be escrowed. It does not contend that an arrangement fee cannot be charged or that any arrangement fee whatsoever must be escrowed. It argues only that under the contract and funeral arrangements at issue here the arrangement fee fell within the ambit of Section 13(c)'s trusting requirement.

Petitioner argues that the arrangement fee is not for *future* services, but present ones. He thus asserts that Section 13(c) does not require him to place any of that fee into an escrow account.

According to the Agreement the arrangement fee is thirty percent of the "total purchase price." [7] That term is not specifically defined in the Agreement but the Board's finding No. 22 indicates that it consists of professional services, facilities and automotive equipment. The Agreement contains a line which reads "TOTAL PURCHASE PRICE OF PROFESSIONAL SERVICES, FACILITIES AND AUTO-

---

**6.** That regulation, which became effective on November 4, 1989, reads in pertinent part as follows:

(e) Under section 13(c) of the act (63 P.S. § 479.13(c)), the entire amount received for the prepaid burial shall be placed in escrow or trust, in a banking institution in this Commonwealth. Additional service fees charged shall be specifically disclosed within the prepaid burial contract or in a separate contract.

49 Pa.Code § 13.224(e).

**7.** We note that by employing the thirty percent figure Petitioner is able to retain exactly the amount he would have retained under the trusting provision in the Future Interment Law which provision is inapplicable to him because he is a funeral director. *Pennsylvania Funeral Directors Association.*

MOTIVE EQUIPMENT." There is thus substantial evidence to support the Board's finding.[8]

Under Section 13(c) the one hundred percent trusting requirement comes into play when there is (1) a contract (2) with a living person (3) to render funeral services. Where these three criteria are present *any* money for such contract is to be placed into trust. Here there was a contract entered into between Petitioner and Mr. Nello to render funeral services and part of those services was the explanation of the options one has in planning his funeral arrangements. Accordingly, *any* arrangement fee, including this one, is a sum falling within the broad language of Section 13(c).[9]

Additional support for our reading of Section 13(c) as all encompassing exists by virtue of the fact that all monies collected, even merely for merchandise which could be purchased elsewhere (for example, flowers) must be placed in trust. If funeral directors are required to trust those sums, then certainly sums for planning and consulting must give rise to the trusting requirement as well.

Petitioner further argues that the Board's sanctioning of him for charging an arrangement fee is violative of due process because it has approved of such fees in instances where the fees are not computed on the basis of a percentage of the total purchase price. Specifically, Petitioner maintains that the Board's interpretation of Section 13(c) is unconstitutional because while the method of calculation of such fees might be different for different funeral directors, a percentage of the funds collected is still not

8. We observe that Petitioner does *not* attempt to retain any percentage of the "total purchase price" of column B of the Agreement (dealing with funeral merchandise). Such action would clearly violate *Pennsylvania Funeral Director's Association*. As with column A, total purchase price in column B is not defined either.

9. We take judicial notice of the Board's regulation which was adopted subsequent to the litigation in this case, *see supra* n. 6, and recognize that our holding appears to be inconsistent with that regulation. Since the regulation is not before us we, of course, cannot strike it, but we express our disagreement with the Board's interpretation of Section 13(c).

trusted. We agree with Petitioner that the Board's distinction is an arbitrary one. Whether fees are computed as a part of the total purchase price or under a separate contract the result is still the same, as Petitioner astutely points out. But, while we agree with Petitioner that the Board's standard is arbitrary, we cannot grant him all the relief he seeks because we hold that *all such fees*, no matter how collected, must be trusted.

 Finally, we move to the question of penalty. We will not overturn the Board's penalty absent an abuse of discretion. *Hendrickson v. State Board of Medicine*, 108 Pa.Commonwealth Ct. 124 529 A.2d 78 (1987). If a penalty is unduly harsh, we may modify it. *Id.* We must thus determine whether the penalty is reasonable in light of the violation. *Id.* Petitioner argues that the penalty here is excessively harsh. We agree. While we believe that the statute, and this Court's order of June 18, 1985 entered in *Pennsylvania Funeral Directors Association*, are sufficiently clear, we also believe, in light of the fact that the narrow issue here is one of first impression and that reasonable minds could differ as to whether the fee is covered under Section 13(c), that the penalty of license revocation is too severe. Accordingly, we shall modify the penalty by reversing the Board's order insofar as it revoked Petitioner's license. In light of the Board's finding, however, that Petitioner did not show Mr. Nello the second page of the Agreement, which explained in detail that thirty percent of the monies Petitioner collected would not be placed in escrow, we believe that some penalty is appropriate. Therefore, we uphold the Board's imposition of the fine in question.

PELLEGRINI, J., concurs in the result only.

## ORDER

NOW, July 20, 1990, the Board's application for relief in the nature of a motion to strike is hereby granted in part and denied in part. The Board's revocation of Petitioner's

license is reversed and his license is reinstated, and the Board's imposition of a $1,000 fine is affirmed.