529 A.2d 78

Ernest Stuart Hendrickson, M.D., Petitioner *v.* Commonwealth of Pennsylvania, State Board of Medicine, Respondent.

Argued May 21, 1987, before Judges DOYLE and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*Theodore J. Kukunas,* for petitioner.

*Kenneth E. Brody,* Assistant Counsel, with him, *Joyce McKeever,* Chief Counsel, for respondent.

OPINION BY JUDGE PALLADINO, July 30, 1987:

Ernest Stuart Hendrickson, M.D. (Petitioner) appeals an order of the State Board of Medicine[1] (Board)

---

[1] The Board was formerly known as the State Board of Medical Education & Licensure, which was established by section 412 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 127, *as*

revoking his license to practice medicine and surgery in Pennsylvania for not having malpractice insurance in violation of Section 701 of the Health Care Services Malpractice Act.[2] The order required Petitioner to actively serve 6 months of the revocation. The remainder of the revocation was stayed subject to two conditions: (1) that Petitioner satisfy his professional liability insurance responsibilities in the future; and (2) that should Petitioner terminate his coverage or allow it to lapse, he notify the Board and the Catastrophe Loss Fund (Fund)[3] within 3 days.

*amended, formerly* 71 P.S. §122. Section 412, 71 P.S. §122 was repealed by section 48(a) of the Medical Practice Act of 1985, Act of December 20, 1985. Section 46 of the Medical Practice Act of 1985 reestablished the Board and section 2 of that act titled it the "State Board of Medicine." 63 P.S. §422.21

[2] Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §1301.701. This section provides, in pertinent part:

(a) Every health care provider as defined in this act, practicing medicine or podiatry or otherwise providing health care services in the Commonwealth *shall* insure his professional liability only with an insurer licensed or approved by the Commonwealth of Pennsylvania, or provide proof of self-insurance in accordance with this section.

(1)(i) A health care provider . . . who conducts more than 50% of his health care business or practice within the Commonwealth of Pennsylvania shall insure or self-insure his professional liability in the amount of $100,000 per occurrence and $300,000 per annual aggregage, . . . hereinafter known as 'basic coverage insurance' and shall be entitled to participate in the fund. . . . (Emphasis added.)

[3] The Fund was established by section 701(d) of the Health Care Services Malpractice Act and is funded by a surcharge on those health care providers carrying "basic coverage insurance." 40 P.S. §1301.701(a). The Fund was established to pay the amount of all awards, judgments and settlements of loss or damages against a health care provider entitled to participate in the fund . . . to the extent such health care provider's share exceeds his basic coverage insurance in effect at the time of the occurrence as provided in subsection (a)(1).
*Id.*

Petitioner is a psychiatrist who maintains a sole practice. Petitioner's professional liability insurance lapsed on May 2, 1983 after his office manager at that time failed to open the renewal notice and have Petitioner sign a check for the premium due. The Fund notified Petitioner by letter, dated September 21, 1983 and a follow up "Penn-Gram", dated November 2, 1983, that he was not in compliance with his professional liability insurance responsibilities. These documents were received in Petitioner's office, but his office manager at that time did not make him aware of them. This office manager left Petitioner's service in July, 1984.

Petitioner's new bookkeeper discovered Petitioner did not have malpractice insurance in late December 1984 when she was attempting to close his books. Petitioner applied for insurance on January 4, 1985. This application was returned because it was accompanied by an insufficient fee. The application was resubmitted and in March, 1985, Petitioner's insurance coverage became effective.

Petitioner was served with a complaint and order to show cause why his medical license should not be suspended or revoked for violation of Section 701 of the Health Care Services Malpractice Act. A hearing was held on February 26, 1986. Petitioner admitted he was not covered by the requisite professional liability insurance from May 2, 1983 until March, 1985.[4] He presented evidence concerning the reasons for non-compliance, which included his incompetent office manager, several

---

[4] Petitioner moved his office in April 1983. In late 1984, his new bookkeeper discovered boxes of unopened mail, dated from April 1983 to July 1984, in a closet. The bookkeeper testified that she began sorting this mail from the most recent backwards and that sometime in 1985 she found the unopened premium notice for Petitioner's liability insurance which expired in May 1983.

burglaries at his pizza shop and home, and the death of a friend who owed him a substantial amount of money.

The Board, in its adjudication, considered and discussed these circumstances, along with Petitioner's current compliance with insurance requirements and his modification of office procedure, in relation to possible sanctions to impose on Petitioner. On July 21, 1986, the Board issued its order revoking Petitioner's license to practice medicine and surgery in Pennsylvania. However, the revocation was to be stayed after 6 months, subject to Petitioner (1) satisfying his professional liability insurance responsibilities in the future and (2) notifying the Board and the Fund within 3 days of any termination or lapse of this insurance.

On appeal to this court, Petitioner contends the Board abused its discretion because the penalty imposed was unduly harsh and manifestly unreasonable. He bases this contention on two points. First, he asserts that the penalty imposed as a result of his unintentional conduct is inconsistent with penalties imposed on physicians whose intentional conduct had resulted in their conviction of criminal activity and, therefore, unreasonable. Second, he argues that the 6 month active revocation will devastate his sole practice and it is, therefore, unduly harsh.

In support of his inconsistency argument Petitioner cites a number of cases in which he contends the penalties imposed by the Board on physicians, as a result of intentional conduct, were less severe than the penalty imposed on him.[5] Petitioner's reliance on these cases is

---

[5] The cases cited by Petitioner were: *Benninghof v. State Board of Medical Education and Licensure*, 78 Pa. Commonwealth Ct. 212, 467 A.2d 109 (1983) (30 day suspension for violation of section 15 (a)(2), (3) & (6) of Medical Practice Act of 1974); *Pincus v. State Board of Medical Education & Licensure*, 56 Pa. Commonwealth Ct. 329, 424 A.2d 999 (1981) (1 year suspension for violation

misplaced. The sanctions on the physicians in those cases were imposed pursuant to subsection 15(b) of the Medical Practice Act of 1974[6] for violations of subsection 15(a) of that act.[7] Subsection 15(b) provided 6 possible actions which the Board was allowed to take when disciplining physicians determined to be in violation of subsection 15(a). Petitioner has admitted to violating the professional liability insurance requirement of section 701 of the Health Care Services Malpractice Act. Subsection 701(f) specifically states that "failure of any health care provider to comply with *any* provisions of this section . . . *shall* result in suspension or revocation of the health care provider's license by the license board." 40 P.S. §1301.701(f) (emphasis added).

We note that section 42 of the Medical Practice Act of 1985,[8] effective January 1, 1986, does set out 7 possible disciplinary or corrective actions which the Board may take whenever empowered to take such action by any statutory authority. However, in light of the specific requirement for revocation and suspension in the Health Care Service Malpractice Act, we conclude that penalties imposed pursuant to the Health Care Service Malpractice Act are not unreasonable although they may be inconsistent with those imposed for violations of the Medical Practice Act of 1974 or the Medical Practice Act of 1985, neither of which have any such specific requirement.

---

of section 15(a)(3), (6) & (8) of the Act of 1974); *Catena v. State Board of Medical Education & Licensure,* 49 Pa. Commonwealth Ct. 542, 411 A.2d 869 (1980) (6 month suspension and 3 year probation for violation of section 15(a)(2) and (3) of the Act of 1974).

[6] Act of July 20, 1974, P.L. 551, *as amended, formerly* 63 P.S. §421.15(a). The Medical Practice Act of 1974 was repealed by the Medical Practice Act of 1985, Act of December 20, 1985, P.L. 457, 63 P.S. §§422.1-422.45.

[7] 63 P.S. §421.15(a). *See supra* note 6.

[8] Act of December 20, 1985, P.L. 457, 63 P.S. §422.42.

This court may consider a claim of abuse of discretion by an administrative agency and may modify the order if the penalty imposed is unduly harsh. *Kobylski v. Milk Marketing Board,* 101 Pa. Commonwealth Ct. 155, 516 A.2d 75 (1986). In doing so, we are limited to determining whether the penalty is reasonable in light of the violation. *Trevorton Anthracite Co. v. Department of Environmental Resources,* 42 Pa. Commonwealth Ct. 84, 400 A.2d 240 (1979). This court may not substitute its judgment for that of the Board if the penalty imposed was reasonable. *Pincus v. State Board of Medical Education & Licensure,* 56 Pa. Commonwealth Ct. 329, 424 A.2d 999 (1981). In upholding the constitutionality of the professional liability insurance requirement, this court noted that the purpose of that requirement was to make malpractice insurance available to all health care providers to assure compensability for claims and to protect those who provide medical services from financial ruin. *McCoy v. State Board of Medical Education and Licensure,* 37 Pa. Commonwealth Ct. 530, 391 A.2d 723 (1978).

Petitioner knew he was required to have malpractice insurance. He delegated this important responsibility to his office manager but never bothered to ensure it was done. It was not until December, 1984 that Petitioner discovered he was not insured, and then only because of his new bookkeeper's diligence. While his failure to maintain his insurance may have been unintentional, his conduct in allowing it to lapse was grossly negligent.

Petitioner contends a 6 month revocation will devastate his practice. However, his conduct has placed all the patients he treated during a 23 month period at risk. The Board in its adjudication considered requiring Petitioner to self-insure for this 23 month period but chose to impose the 6 month active revocation because of the prohibitive cost of self-insurance.

The penalty imposed was reasonable in light of the violation. Accordingly, we affirm.

ORDER

AND NOW, July 30, 1987, the order of the State Board of Medicine in the above-captioned matter is affirmed.