.572 A.2d 819

**J.H. STORCH, Individually and d/b/a J.H. Storch, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, STATE BOARD OF VEHICLE, MANUFACTURERS, DEALERS AND SALESPERSONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 1989.

Decided March 22, 1990.

Petition for Allowance of Appeal Denied Sept. 19, 1990.

Arthur L. Goldberg, with him, J. Jay Cooper, Goldberg, Katzman & Shipman, P.C., Harrisburg, for petitioner.

Peter K. Bauer, Counsel, State Bd. of Vehicle Mfrs., Dealers and Salespersons, with him, Joyce McKeever, Chief Counsel, Bureau of Professional and Occupational Affairs,

and Velma A. Boozer, Chief Counsel, Dept. of State, for respondent.

Before CRUMLISH, Jr., President Judge, COLINS, J., and BARBIERI, Senior Judge.

COLINS, Judge.

Jay H. Storch (petitioner) petitions for review of an adjudication and order of the State Board of Vehicle Manufacturers, Dealers and Salespersons (Board) dated February 16, 1989, which revoked petitioner's vehicle salesperson's license and vehicle dealership license pursuant to the Board of Vehicles Act (Act)[1] and fined petitioner $3,000 based on his guilty pleas to one violation of 15 U.S.C. § 1986 (conspiracy to reset or alter odometers) and two violations of 15 U.S.C. § 1984 (knowingly and willfully resetting or causing to be reset odometers of a motor vehicle).[2]

Petitioner holds both a salesperson's license and a vehicle dealership license in Pennsylvania and is the owner of the Jay H. Storch automobile dealership. In early 1985, petitioner was targeted by a joint state and federal task force pursuant to its investigation of a number of individuals, including petitioner, relating to their suspected involvement with odometer tampering. Petitioner entered into a plea agreement with the federal authorities, filed September 1, 1987, wherein he agreed to plead guilty to the federal violations and to cooperate fully with the government in its investigation in return for reduced penalties. Pursuant to this agreement petitioner provided the task force with valu-

1. Act of December 22, 1983, P.L. 306, 63 P.S. §§ 818.1–818.28. Section 10(4) of the Act, 63 P.S. § 818.10(4), empowers the Board to, among other things, revoke any license of "a vehicle dealer, broker or salesperson [who has] ... pleaded guilty ... in a court of competent jurisdiction in this or any other state or Federal jurisdiction of forgery, embezzlement, obtaining money under false pretenses, extortion, conspiracy to defraud, bribery, odometer tampering or any other crime involving moral turpitude."

2. Section 19(c) of the Act, 63 P.S. § 818.19(c), provides that in addition to any of the other penalties specified in the Act, the Board may "levy a civil penalty of up to $1,000 on any current licensee who violates any provision of this act...."

able information concerning various techniques used in rolling back odometers. He also participated in wiretap investigations in which he permitted the task force to record telephone conversations between himself and other suspected odometer tamperers. He assisted the task force on a weekly, and sometimes daily basis, by contributing his knowledge of the industry and handling particular requests of the task force. As a result of petitioner's cooperation, certain other persons involved in odometer tampering activities were convicted and imprisoned.

On July 13, 1988, the Board issued upon petitioner an order to show cause why disciplinary action should not be taken against him because of his guilty pleas in federal court. A hearing was held on September 15, 1988, at which time the Commonwealth made an oral motion to amend the order to show cause to conform to the evidence with an additional allegation that petitioner permitted another person, not licensed by the board, to use his dealership license in order to operate in Pennsylvania in violation of Section 10(20) of the Act, 63 P.S. § 818.10(20). The Board granted the motion.

Following the hearing, the Board concluded that petitioner's odometer tampering activities evidenced a disregard of his duty to be honest and fair to the public and constituted a serious violation of the Act. Acknowledging its responsibility to protect the safety and welfare of the motoring public, the Board revoked both of petitioner's licenses and fined him $3,000.

Petitioner first argues that the Board abused its discretion in revoking his licenses in view of the mitigating circumstances present. Petitioner asserts that the Board should have given greater weight to his substantial cooperation with state and federal law enforcement officials, his voluntary cessation of the illegal activities prior to his first being contacted by state investigators on February 27, 1985 and the favorable testimony of character witnesses presented on his behalf. Additionally, petitioner submits that because he already has paid substantial fines to both the

Commonwealth and federal authorities, has performed public service, has successfully completed an Accelerated Rehabilitative Disposition Program and has not violated his probation, that no further punishment is warranted. He maintains, therefore, that the Board's revocation of his licenses was excessive punishment and unduly harsh and that this Court should modify the Board's order accordingly.

We agree with petitioner that this Court may modify the order of an administrative agency if we deem the penalty to be unduly harsh. *Hendrickson v. State Board of Medicine*, 108 Pa.Commonwealth Ct. 124, 529 A.2d 78 (1987). However, we may not substitute our judgment for that of the Board, so long as the penalty imposed was reasonable in light of the violation. *Id.*

An analysis of the relevant precedents indicates that we must affirm the Board in the instant matter. In *Hendrickson*, this Court affirmed the State Board of Medicine's revocation of the petitioner's license to practice medicine and surgery for six months for allowing his medical malpractice insurance to lapse. In spite of the petitioner's arguments that the policy lapsed due to incompetent office management and that the revocation for six months would devastate his practice, we concluded that the revocation was not unduly harsh because "[w]hile his failure to maintain his insurance may have been unintentional, his conduct in allowing it to lapse was grossly negligent." *Id.*, 108 Pa. Commonwealth Ct. at 130, 529 A.2d at 81. Of course, *Hendrickson* dealt with negligent conduct as did *Slawek v. State Board of Medical Education and Licensure*, 124 Pa.Commonwealth Ct. 481, 556 A.2d 525 (1989), a case cited by petitioner as authority for his contentions. Neither of the preceding cases dealt with intentional conduct as in the instant matter and, therefore, both are inapplicable.

Petitioner's actions were criminal, intentional and clearly outrageous. Petitioner testified under cross examination that he was aware that there were federal laws against rolling back odometers, but that to his knowledge they were

generally not enforced. Moreover, he had only ceased his activities in 1983 because he became aware that Pennsylvania had new legislation making odometer tampering a criminal offense and that state authorities intended to enforce it. Petitioner also testified that he could have rolled back as many as five hundred odometers in his business career. Furthermore, he had paid a certain individual $15.00 per car to roll back the odometers; instructed that individual as to how much mileage should be put on each vehicle that he rolled back; altered the mileage on auction slips and on the titles; prepared Pennsylvania title applications containing false mileage; forged the name of a mechanic to verify the vehicle identification number on all documentation; used an expired notary seal of a friend and filled in a false expiration date; and actually sold the cars knowing that the odometers were rolled back.

While the Board acknowledged that petitioner gave substantial assistance to the state and federal authorities in their investigation, its decision to give little weight to petitioner's mitigating evidence is a discretionary decision, solely within its province as the factfinder. The Board, mindful of its obligation to protect consumers from fraudulent, unethical behavior in the industry chose to give greater weight to the seriousness of petitioner's violations. The Board has no obligation to impose a lesser sanction or to give consideration to fines paid and penalties served by petitioner to the state and federal authorities. Considering the seriousness of petitioner's conduct, we cannot conclude that the Board abused its discretion. The sanctions imposed by the Board were within its discretion under Sections 10(4) and 19(c) of the Act, 63 P.S. §§ 818.10(4) and 818.19(c). This Court may not substitute a lesser sanction for that of the Board's where there has been no abuse of discretion.

The plea "bargain" agreement that was negotiated between the federal authorities and petitioner was mutually advantageous. It is not within our province to comment upon such agreements. However, there is no merit to

petitioner's argument that this agreement, which kept petitioner out of the federal penitentiary, should somehow be bootstrapped into allowing petitioner to return to his former occupation without any discipline being imposed by a state licensing agency not a party to the agreement.

■ Petitioner next argues that because the Act in question became effective January 1, 1984, and the offenses to which he pleaded guilty in Federal court took place between 1980 and 1983, that the Board applied the Act retroactively in violation of his constitutional rights. We disagree. The event which resulted in the revocation of petitioner's licenses was his guilty pleas entered on December 21, 1987 to violations involving odometer tampering and not the actual commission of those violations. *See Galena v. Department of State, Professional and Occupational Affairs,* 122 Pa. Commonwealth Ct. 315, 551 A.2d 676 (1988); *Morris v. Department of State, Bureau of Professional and Occupational Affairs, State Board of Pharmacy,* 113 Pa.Commonwealth Ct. 318, 537 A.2d 93 (1988).

Additionally, petitioner argues that the Commonwealth knew of his activities as early as 1984, some three years before the Board acted to revoke his licenses and, therefore, its action should be barred by the doctrine of laches. Chief Deputy Attorney General for the Commonwealth, Gregory P. Abeln appeared at the hearing on petitioner's behalf and testified that he first came in contact with petitioner sometime in 1984 after he was placed in charge of the statewide auto theft task force and began investigation into odometer rollbacks in Pennsylvania.[3] As prosecutor in the state's action, Attorney Abeln negotiated a plea agréement with petitioner that if he agreed to plead guilty to the charges under Section 7121 of the Vehicle Code, 75 Pa.C.S. § 7121, and cooperate with the task force investigation, Attorney Abeln would recommend to the court that petitioner be

---

**3.** Attorney Abeln testified that petitioner was charged separately by the state authorities with violations of Section 7121 of the Vehicle Code, 75 Pa.C.S. § 7121 (false application for certificate of title or registration).

placed on the Accelerated Rehabilitative Disposition Program in addition to a fine. Attorney Abeln testified:

My notes reflect that I suggested to him [petitioner] that I would consider no jail, fine, restitution, immunity from further prosecutions by the state, and I have in here stay in business, make a living and pay restitution, to work with us and then therefore affirmative recommendation for penalty. Now that means in my notes that I agreed and that's why I'm here today as a prosecutor testifying in his behalf. This is the first time I'm [sic] ever done this and I don't imagine I will do it again under other circumstances, but that was part of our original agreement was that if there were any civil or criminal aspects that would be brought against him I would come to that particular entity and at least explain to whomever what his cooperation was.

■ Petitioner contends that he was substantially prejudiced by the Board's delay and that he relied to his detriment upon Attorney Abeln's commitment that he would not cause any action to be taken against petitioner's licenses which would impair his ability to earn a living in giving his full cooperation to both state and federal authorities. Additionally, he maintains that he incurred great personal risk and great financial expense through the plea agreements in the belief that his ability to earn a living would be protected. Paragraph 15 on page 7 of the plea agreement that petitioner entered into with the federal authorities states:

[i]t is further understood and agreed that the status of any professional license held by the defendant [petitioner] is not protected by this agreement and is a matter solely within the discretion of the appropriate licensing authority. The Government may in its discretion provide to any such licensing authority any documents and information in its possession.

(Record at 22.) Thus, petitioner was put on notice from the outset that the authorities were making no guarantees with respect to the status of his professional licenses. Moreover, the Board was not a party to and was not bound by either

plea agreement that petitioner entered into with the state and federal authorities. The Board's order to show cause was issued on July 13, 1988, approximately seven months after petitioner pleaded guilty to the subject violations on December 21, 1987. Prior to that date, the Board was not empowered to take action against petitioner under Section 10(4) of the Act, 63 P.S. § 818.10(4). We conclude first that this is not the type of delay which would invoke the doctrine of laches and second, that petitioner has failed to show how this delay has prejudiced him. During the pendency of this action, by operation of a supersedeas, petitioner has been able to continue doing business.

■ Lastly, petitioner suggests that the Commonwealth was improperly allowed to amend its order to show cause at the hearing to add an additional allegation that petitioner violated Section 10(20) of the Act, 63 P.S. § 818.10(20). Petitioner asserts that under 1 Pa.Code § 35.49, pleadings may only be amended at a hearing with the express or implied consent of the parties, and that no such consent existed here. The Board stated in its opinion that its revocation of petitioner's licenses was based *solely* on petitioner's guilty pleas to odometer tampering and that it did not consider his alleged violation of Section 10(20) of the Act. The Board concluded that petitioner's odometer tampering convictions were sufficient in and of themselves to warrant its revocation of his licenses. We are in agreement with the Board's conclusion and hold that its action in granting the Commonwealth's motion to amend the order to show cause constituted harmless error.

Based upon the foregoing, the adjudication and order of the Board is affirmed.

## ORDER

AND NOW, this 22nd day of March, 1990, the adjudication and order of the State Board of Vehicle Manufacturers, Dealers and Salespersons in the above-captioned matter is affirmed.