650 A.2d 1226

**Jeffrey WILL and Connecto Electric, Inc., Appellants,**

**v.**

**The ELECTRICAL CONTRACTORS EXAMINING BOARD OF the CITY OF ERIE.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 21, 1994.

Decided Nov. 23, 1994.

536

John H. Daneri, for appellants.

Gerald J. Villella, for appellee.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

PELLEGRINI, Judge.

Jeffrey Will and Connecto Electric, Inc. (collectively, "Will") appeal an order of the Court of Common Pleas of Erie County (trial court) which affirmed a decision of The Electrical Contractors Examining Board of the City of Erie (Board) suspending Will's electrical contractor's license.

Will received a notice of a complaint dated March 30, 1990, filed against him by the Board contending that he installed a 4160 volt wire on a transformer rated only at 600 volts at Mercyhurst College. The complaint also contained a reference to Article 1713.02(*l* )(5) of the Erie Building Code (Code) which indicated that Will's license could be suspended, revoked or not renewed by the Board if Will had committed an act of *gross* negligence. Following a hearing, the Board voted to suspend Will's license for 30 days for finding that his act was one of gross negligence.

On appeal to the trial court, Will argued that he was not afforded sufficient due process prior to the suspension of his license and that he was improperly deprived of his license because of the unconstitutionality of Article 1713 of the Code which failed to define gross negligence. The trial court affirmed the decision of the Board on the basis that Will "was properly afforded sufficient due process prior to the suspension of his license." Reproduced Record (R.R.) at 57a.

█ Before this court, Will again asserts the unconstitutionality of Article 1713 and argues that he was deprived of due process because the language of the Code is vague and overbroad insofar as it does not provide guidelines or a definition of what constitutes "acts of gross negligence." [1] Because the Act does not define "gross negligence", Will contends that he is unable to defend against the action.

---

1. Our scope of review is limited to a determination of whether constitutional rights have been violated and whether the decision is in accordance with law and supported by substantial evidence. *Horvat v. Pennsylvania Department of State Professional and Occupational Affairs,* 128 Pa.Commonwealth Ct. 546, 563 A.2d 1308 (1989) (citing *Cassella v. Pennsylvania State Board of Medicine,* 119 Pa.Commonwealth Ct. 394, 547 A.2d 506 (1988)).

The Board, however, contends that Article 1713 of the Code does define "gross negligence", albeit indirectly, by setting a case standard. Article 1713.01(a) defines an electrical contractor and indicates:

> An "electrical contractor" shall be a person having the necessary qualifications, training, experience and technical knowledge to plan, lay out and supervise the installation and repair of electrical wiring apparatus and equipment for any electrical use whatsoever in accordance with the standard rules and regulations governing such work.

R.R. at 43a.

The Board asserts that because the Code defines an electrical contractor as one who performs services under recognized standards of care, a suspension of license by the Board for a breach of that standard is permissible if it was a "gross" breach of that standard. In the end then, the question is answered by whether "gross" negligence as meaning more than ordinary negligence is sufficiently knowledgeable so as not to be vague or overbroad.

In *Bloom v. DuBois Regional Medical Center*, 409 Pa.Superior Ct. 83, 597 A.2d 671 (1991), the Superior Court addressed, among other issues, what the gross negligence standard means in the context of a breach of a statutorily imposed liability in a lawsuit seeking to hold a psychiatrist liable in tort for the negligent release of a mental patient. Section 7114(a) of the Mental Health Procedures Act, 50 P.S. § 7114(a), makes mental health providers liable for their decisions in the treatment of mental patients, even to third parties, if their conduct rises to the level of "gross negligence." [2] Like the

---

**2.** Section 7114(a) provides:

> In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

Code at issue here, nowhere in the Mental Health Procedures Act is the term "gross negligence" defined. Using "negligence" as a touchstone, the Superior Court explained that the term means "facts indicating more egregiously deviant conduct than ordinary carelessness, laxity or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." *Id.* 409 Pa.Super. at 98, 597 A.2d at 679.

We agree with the Superior Court's reasoning that gross negligence is that which "grossly deviates from the standard of care." Because Article 1713 of the Code sets forth the ordinary negligence standard, any conduct that "grossly deviates" from that standard is gross negligence. Just as "gross negligence" is sufficiently understandable so as to allow an individual to be able to defend against an action having the potential to impose substantial money damages under the Mental Health Procedures Act, it is sufficiently understandable to defend against a license suspension. Moreover, just as we all know what the term "gross" means as commonly understood when used colloquially to describe conduct, we all know what the term "gross" means when it is used to describe negligence.

Because the term is sufficiently understandable, Will's due process rights were not violated. Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 23rd day of November, 1994, the order of the Court of Common Pleas of Erie County, Docket No. 61–EQ–1990, is affirmed.

FRIEDMAN, Judge, dissenting.

I disagree with the majority's contention that "gross negligence" is so colloquially understandable as to allow Will to defend himself against an action for allegedly violating Article 1713 of the Erie Building Code (Code). Therefore, I must dissent.

The majority agrees with the Board's assertion that because the Code defines an electrical contractor as one who performs services under identifiable standards of care, a suspension of license by the Board for "gross" breach of that standard is permissible. However, the Board and the majority fail to recognize that the Code presently allows for suspension of a license for arbitrarily determined acts of gross negligence based upon prohibited but *undefined* behavior. Section 1713.01, which the majority claims indirectly defines "gross negligence," does nothing more than define the term "electrical contractor." Neither that section nor any other section establishes an applicable standard of care against which an individual's actions may be judged. The Board may not arbitrarily create standards which do not exist in order to justify a license suspension. Due process is intended to protect an individual against such arbitrary action. *Gaster v. Department of Environmental Resources,* 152 Pa.Commonwealth Ct. 505, 620 A.2d 61 (1993); *Commonwealth v. Heck,* 341 Pa.Superior Ct. 183, 491 A.2d 212 (1985), *aff'd,* 517 Pa. 192, 535 A.2d 575 (1987).

Legislation can be so vague as to deny due process in its enforcement when it limits the ability of those to whom the statute is directed to understand that which is prohibited or mandated. *Pennsylvania Medical Providers Ass'n v. Foster,* 136 Pa.Commonwealth Ct. 232, 582 A.2d 888 (1990); *see also Singer v. Sheppard,* 33 Pa.Commonwealth Ct. 276, 381 A.2d 1007 (1978). Moreover, overbroad and vague statutes deny due process by failing to give fair notice to people of ordinary intelligence that their contemplated activity may be unlawful and by inviting arbitrary and discriminatory enforcement by failing to set reasonably clear guidelines for law officials and courts. *Scurfield Coal, Inc. v. Commonwealth,* 136 Pa.Commonwealth Ct. 1, 582 A.2d 694 (1990); *see also Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

We have previously held in referencing the vagueness challenge to the constitutionality of a statute that

[d]ifficulty in ascertaining whether a violation falls within the penumbra of statutory language challenged as vague

does not necessarily render the statute unconstitutional under the due process clause of the Fourteenth Amendment to the United States Constitution *unless it fails to convey sufficiently definite warning as to proscribed conduct when measured against common understanding and practices.*

*Slovak–American Citizens Club v. Pennsylvania Liquor Control Board,* 120 Pa.Commonwealth Ct. 528, 531, 549 A.2d 251, 253 (1988) (emphasis added); *see Jordan v. De George,* 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886, *reh'g denied,* 341 U.S. 956, 71 S.Ct. 1011, 95 L.Ed. 1377 (1951). Moreover, our Supreme Court has held that an adjudication is invalid "except upon a hearing wherein each party has opportunity to know of the claims of his opponent ..." *Callahan v. Pennsylvania State Police,* 494 Pa. 461, 465, 431 A.2d 946, 948 (1981); *see also Glotfelty v. Board of Veterinary Medicine,* 133 Pa.Commonwealth Ct. 660, 577 A.2d 238 (1990).

Because the Code does not define "the standard rules and regulations governing such work" or "gross negligence," there is no standard against which Will's work, as an electrical contractor, can be tested. Accordingly, charging Will with "gross negligence" does not enable him to prepare a proper defense.

Without clear guidance as to the charge Will is required to defend against, which is a denial of procedural due process, I refuse to interrupt Will's property interest in his livelihood. Accordingly, I would reverse the order of the trial court.

KELLEY, J., joins in this dissent.