Jeffrey WILL and Connecto Electric, Inc., Appellants,

v.

CITY OF ERIE and the Electrical Contractors Examining Board of the City of Erie.

Commonwealth Court of Pennsylvania.

Argued June 8, 2000.

Decided Dec. 7, 2000.

Peter J. Belott, Jr., Erie, for appellants.

Gerald J. Villella, Erie, for appellees.

Before COLINS and PELLEGRINI, Judges, JIULIANTE, Senior Judge.

PELLEGRINI, Judge [1].

Jeffrey Will and Connecto Electric, Inc. (collectively, Will) appeal from an order of the Court of Common Pleas of Erie County (trial court) affirming the Electrical Contractors Examining Board of the City of Erie's (Board) decision to revoke Will's electrical contractor's license.

By letter dated December 19, 1997, the Board charged Will with performing elec-trical work without first obtaining the re-quired permits in violation of Section 1711.03 of the City of Erie's Electrical Contractor's Licensing Ordinance of 1973 (Ordinance).[2] In addition to the alleged violation, the Board also acknowledged four previous recorded failures of Will to obtain necessary permits, as well as a pri-or suspension of Will's electrical contrac-tor's license. The Board concluded that Will violated § 1711.03 of the Ordinance and revoked his electrical contractor's li-cense.

■ Will appealed the revocation of his license to the trial court, which, while af-firming the finding that the violation had occurred, remanded back to the Board for development of a record regarding the revocation. On remand, the Board intro-duced into the record three notices it re-ceived regarding alleged violations of the Ordinance by Will. It also introduced a previous Opinion and Order of this Court affirming a 30–day suspension of Will's li-cense for a 1990 violation .[3] Following the introduction of this evidence, the Board notified Will that his license would be sus-pended for 30 days prior to revocation, as the 1990 suspension had yet to be im-posed.[4] Will again appealed to the trial court contending that the Board's decision to revoke his electrician's license lacked necessary findings, was not supported by substantial evidence, and violated the Op-tional Third Class City Charter Law (Charter Law).[5] The trial court affirmed

---

1. This opinion was reassigned to the author on October 31, 2000.

2. Article 1711, Section 1711.03 of the Ordi-nance provides:
   The application for inspection shall be filed before starting the work, and either the receipt for the application or other evidence that the application has been made shall be displayed on or about the premises where the work is to be done.

3. See Will v. Electrical Contractors' Examining Board, 168 Pa.Cmwlth. 535, 650 A.2d 1226 (1994).

4. Under Erie's Building Code, a licensee who has had a license revoked may reapply for a new license after 90 days from the date of revocation. Building Code § 1713.02(n). The effect of Will's license being revoked only after it was suspended for 30 days is to extend the time that he may seek reinstatement of his license once revoked.

5. Act of July 15, 1957, P.L. 901, as amended, 53 P.S. §§ 41101–41625.

and this appeal followed.[6]

■ Aside from his contention that there was not substantial evidence to support his revocation,[7] Will makes a direct challenge on the Board's power to revoke his license.[8] He argues that the City of Erie (Erie), as a Mayor–Council Plan–A Home Optional Third Class City,[9] exceeded its power under the Charter Law because that law limits its ability to sanction violations by imposing a penalty on him and not revoking his license. Will further argues that even if Erie can provide for the revocation of a license when a licensing ordinance is violated, it did not have the power to vest in the Board the power to revoke his license because Erie can only enact an ordinance that creates an advisory board and not a regulatory board.[10]

■ What this case involves is an interpretation of the provisions of the Charter Law. That law was enacted by the General Assembly to give "cities of the third class the right and power to adopt one of several plans of optional charters [11] and to exercise the powers and authority of local self government." [12] To adopt an optional plan, a third-class city elects a charter commission to make a recommendation as to what form of government that particular third-class city should adopt. If the charter commission makes a recommendation that an optional plan is to be adopted, that recommendation must be submitted to the voters for adoption. If adopted, the internal affairs are then governed by the form of government that is adopted as set forth in the Charter Law.

Article III of the Charter Law, 53 P.S. §§ 41301–305, contains common provisions applicable to all optional plans. As to whether Erie has the power to enact an ordinance providing for the revocation of a license, Section 303 of the Charter Law [13] provides, in relevant part, that a third-class optional plan city shall have the power to:

(1) Organize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and

---

6. Our scope of review of a local agency decision where the trial court does not take evidence is limited to determining whether constitutional rights were violated, an error of law committed, whether the necessary findings are supported by substantial evidence, and whether the procedures of the local agency were contrary to statute. *Mulberry Market, Inc. v. City of Philadelphia, Board of License & Inspection Review*, 735 A.2d 761 (Pa.Cmwlth. 1999).

7. We reject Will's additional arguments that the Board's decision lacked necessary findings and was not supported by substantial evidence. Aside from the factual evidence of other violations, Will's own admission that he did not obtain the permits is substantial evidence to support such a finding.

8. No argument is made that Will does not have standing to raise such a contention in an enforcement proceeding.

9. *See* Sections 401–421 of the Charter Law, 53 P.S. §§ 41401–41421.

10. Erie Ordinance 40–1973 known as the "Electrical Contractor's Licensing Ordinance of 1973" created a Board of Examiners of Electrical Contractors and made it unlawful for any "[p]erson, firm, corporation or other legal entity" to "enter into, engage in, or work in business as an electrical contractor for hire" without first obtaining a license and a certificate therefore granted by the Board. It authorized the Board to "prescribe the conditions of examination of persons applying for a license" from the Board and empowered the Board to "suspend, revoke or refuse any license" if the holder secured a license by misrepresentation; failed to maintain qualifications required by the ordinance; engaged in fraudulent business activities or misleading advertising practices; violated a provision of the ordinance; or committed an act of gross negligence.

11. It provides for two optional forms of government: a Mayor Council Plan–A, 53 P.S. §§ 41401–41421 and a Council Manager form of government. *See* Sections 501–522 of the Charter Law, 53 P.S. §§ 41501–41522.

12. *See* Historical and Statutory Notes to Section 101 of the Charter Law, 53 P.S. § 41101.

13. 53 P.S. § 41303.

duties thereof and fix their term, tenure and compensation;

(2) Adopt and enforce local ordinances;

(2.1) Impose penalties of fine not exceeding one per month on a property and limited to no more than one thousand dollars ($1,000) for the first two continual and uncorrected violations and not exceeding five thousand dollars ($5,000) for the third and any subsequent continual and uncorrected violation of the same subsection of a building ordinance, housing ordinance, property maintenance ordinance, fire prevention ordinance, electrical ordinance or plumbing ordinance on the same property, unless the violation is found to pose a threat to the public's health, safety or property, then penalties of fine may be provided for as follows:

. . . .

(2.2) Impose penalties of fine not exceeding one thousand dollars ($1,000) or a term of imprisonment not exceeding ninety days, or both, for violations of any section of any other ordinance.

Will contends that Subsections 2.1 and 2.2 of this provision only authorize Erie to impose a fine of no more than $1,000 or imprisonment of no more than 90 days and, by doing so, it forecloses Erie from giving the Board the power to revoke an electrical contractor's license as it did in Section 194.03(1) of the Erie Building Code because Section 303 does not specifi-

cally allow for the revocation of a license.[14] However, that contention ignores Section 303(2) of the Charter Law which gives optional third-class cities the power to "adopt and enforce ordinances." If an optional third-class city is given the power to license businesses, it correspondingly follows that an optional third-class city is given the power to revoke that license to enforce the ordinance. Moreover, such an interpretation misconstrues subsection 303(2.2) of the Charter Law as it is not a limitation on the power but is, in fact, a grant of penal power to an optional third-class city to provide for fines and imprisonment for violations of its ordinances. By authorizing fines and imprisonment, the General Assembly in no way foreclosed an optional third-class city from revoking licenses it issued. *See Storch v. Commonwealth, State Board of Vehicle Manufacturers, Dealers and Salespersons,* 132 Pa. Cmwlth. 240, 572 A.2d 819, *petition for allowance of appeal denied,* 525 Pa. 661, 582 A.2d 327 (1990); *see also Hinshaw v. McIver,* 244 N.C. 256, 93 S.E.2d 90 (1956).

Even if Erie, as a Mayor–Council Plan–A Optional Third Class City, has the power to revoke an electrical license, Will argues that this form of government specifically provides that only the mayor can exercise executive power of the city[15] and only the mayor can enforce the laws and ordinances of the city.[16] Consistent with those grants of power and this scheme of government, he also points out that Section 410 of the Charter Law[17] limits the

---

**14.** Section 194.03(1) of Erie's Ordinance provides that:

The Board may suspend, revoke, or refuse to renew any license if the holder has: (a) secured such permit by misrepresentation, (b) failed to maintain the qualifications required by this ordinance, (c) engaged in fraudulent business activities or in misleading advertising practices, (d) violated a provision of this ordinance or (e) committed an act of gross negligence.

**15.** Section 411 of the Charter Law, 53 P.S. § 41411, provides in relevant part that "[t]he executive power of the city shall be exercised by the mayor."

**16.** Section 412 of the Charter Law, 53 P.S. § 41412, provides in relevant part that "[t]he mayor shall enforce the charter and ordinances of the city and all general laws applicable thereto."

**17.** That section provides that in Mayor–Council Plan–A third-class cities such as Erie, "[t]he council may provide for the manner of appointment of a city solicitor, any planning board, zoning board of adjustment or personnel board in the city, and may create commissions and other bodies with advisory powers." 53 P.S. § 41410.

council's power to establish only advisory commissions and not operating boards that have the power to revoke licenses because that is an executive function solely vested within the mayor.

 We recognize that the General Assembly intended to confer the greatest power of local self-government, and any specific enumeration of that power shall not be construed to limit the general description of power contained in the Charter Law.[18] So long as a council acts within its scope of authority and does not violate any laws of the Commonwealth, its actions or policies will not be disturbed by the judiciary. *Malloy v. Pfuhl,* 116 Pa. Cmwlth. 461, 542 A.2d 202, *petition for allowance of appeal denied,* 520 Pa. 592, 551 A.2d 218 (1988). Nonetheless, no matter how liberally we interpret the grant of power, ordinances enacted have to comply with the form of government that voters adopted; in the case, a Mayor–Council form of government that vests all administrative power in the mayor, and ordinances that infringe on those powers by placing administrative powers in a board are illegal. What Erie Council unintentionally did was to infringe upon the mayor's powers given to her or him under the Mayor–Council Plan. Because Erie is without the power to vest in the Board the power to revoke electrical licenses, the trial court's order sustaining the Board's revocation of Will's electrical contractor's license is reversed.

### *ORDER*

AND NOW, this 7th day of December, 2000, the order of the Court of Common Pleas of Erie County entered December 28, 1999, at docket number 11881–1998, is reversed.

Senior Judge JIULIANTE concurs in the result only.

---

18. Section 304 of the Charter Law specifically provides that when interpreting grants of power, they are to be liberally construed in favor of the optional third-class city. It provides:

> The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to cities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the city.
> 53 P.S. § 41304.