**Gregory MOORE, t/a Jack Rabbit Auto Tags & License Service, Petitioners**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF MOTOR VEHICLES, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 4, 2011.

Decided May 4, 2011.

Barbara A. Darkes, Harrisburg, for petitioners.

Jody L. King, Assistant Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this second appeal, Gregory Moore, t/a Jack Rabbit Auto Tags and License Service (Business), asks whether the Secretary of the Department of Transportation (Secretary) erred in denying its exceptions and affirming the Department of Transportation's (PennDOT) termination of Business' agreements to provide agent and messenger services on PennDOT's behalf.[1] Business argues the Secretary erred in affirming termination of the agreements on the basis of "good cause shown." It also asserts the Secretary abused his discretion in upholding termination of the agreements as the penalties for violating the good cause provisions. Discerning no error, we affirm.

The background to this matter is more fully set forth in our prior opinion in *Moore v. Department of Transportation,* 989 A.2d 49 (Pa.Cmwlth.2009) (*Moore I*) (single judge opinion by Pellegrini, J.). Relevant for present purposes, Business entered into an Agent Services Agreement (Agent Agreement) and a Messenger Services Agreement (Messenger Agreement) (collectively, Agreements) with PennDOT for an initial term of three years each. The Agreements were later renewed by

---

1. Business previously filed a petition for review to this Court after PennDOT terminated the agreements without conducting an administrative hearing. *See Moore, v. Dep't of Transp.,* 989 A.2d 49 (Pa.Cmwlth.2009) (single judge opinion by Pellegrini, J.). Ultimately, with the agreement of the parties, this Court remanded for a hearing and the issuance of an adjudication. Business filed the instant petition for review after the Secretary's decision on the merits.

letter agreement of the parties. The Agreements allowed Business to provide agent and messenger services, including processing and issuing vehicle registration documents and delivering and obtaining documents.

PennDOT personnel and members of the Pennsylvania State Police conducted an on-site audit at Business' Norristown location in May 2009. The audit revealed 10 transactions in which Business accepted invalid drivers' licenses as proof of identification. The audit also revealed that two of Business' employees who were responsible for processing the problematic records, did not attend agent training as required by the Agreements. Business does not dispute these underlying facts.

After the audit, PennDOT notified Business of the termination of its Agreements. PennDOT based the termination on violations of Paragraph 30(1) of the Agent Agreement and Paragraph 28(1) of the Messenger Agreement regarding fraudulent acts, including fraudulent record keeping. PennDOT alleged Business' use of invalid drivers' licenses in the processing of title documents created fraudulent records.

PennDOT subsequently held a meeting for Business to present mitigating circumstances. After the meeting, PennDOT notified Business that the orders for termination would stand without modification. Certified Record (C.R.), Item # 10, Notes of Testimony (N.T.), 01/22/10, at 40–42; Ex. E. Business filed a petition for review to this Court.

Ultimately, by agreement of the parties, we remanded to PennDOT for it to conduct an administrative hearing and issue an adjudication. Business, represented by counsel, participated in an administrative hearing.

After hearing, the hearing officer affirmed the termination of the Agreements. In his proposed report, the hearing officer determined Business' conduct did not constitute fraudulent record keeping. Nevertheless, he upheld termination of the Agreements based on a provision in each Agreement that allows termination for "good cause shown." The issue of whether Business violated the good cause provisions was not discussed at the hearing or cited in PennDOT's original notices of termination. Business filed exceptions to the hearing officer's proposed report.

Thereafter, the Secretary issued an order reopening the record and remanding to the hearing officer, in part, to allow the parties to present evidence on the issue of whether good cause existed for termination of the Agreements. Business offered no additional evidence.

■ Ultimately, the Secretary denied Business' exceptions and upheld termination of the Agreements. Business now petitions for review to this Court,[2] seeking reversal of the Secretary's order and reinstatement of the Agreements.

## I.

■ Business first argues the Secretary erred in affirming termination of the Agreements on the basis of good cause. Business asserts the issue of good cause was not properly before the Secretary because PennDOT never amended its notices of termination to include that issue, and the hearing officer raised the issue of good cause on his own motion. In so doing, Business asserts, the hearing officer violated its right to due process. Business

---

**2.** Our review is limited to determining whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact were supported by substantial evidence. *Gutman v. Dep't of Transp.*, 16 A.3d 566 (Pa.Cmwlth.2011).

claims the hearing officer raised the issue of good cause in his report because of his bias against it. Business argues it lacked sufficient time to prepare a defense for a ground other than fraud, the only basis included in the notices.

According to Business, after the Secretary ordered reopening of the record, it had no obligation to present additional evidence or argument because good cause remained absent from the pleadings and thus, still remained an issue raised solely by the hearing officer and agency head. *See Mifflin Cnty. Sch. Dist. v. Special Educ. Due Process Appeals Bd.*, 800 A.2d 1010 (Pa.Cmwlth.2002) (tribunal cannot raise and decide issues *sua sponte* without a factual record to support its determination); *White v. State Bd. of Optometry*, 682 A.2d 404 (Pa.Cmwlth.1996) (broadening an issue by amendment entitles the party subject to the proceedings to notice of the amendment in the same manner originally given); *see also* 1 Pa.Code § 35.49 (amendments to conform to the evidence); 1 Pa.Code § 35.50 (directed amendments). Business also asserts by participating in a subsequent proceeding, it impliedly risked consenting to an amendment to include good cause. As such, Business contends it was justified in not presenting evidence or argument during the remand proceedings.

Business cites numerous cases in which Pennsylvania appellate courts reversed a trial court's decision where the trial court raised on its own motion an issue or defense on a party's behalf. *See MacGregor v. Mediq, Inc.*, 395 Pa.Super. 221, 576 A.2d 1123 (1990) (ordering remand where trial court sustained defendant's preliminary objections based on a defense not raised by defendant); *Wojciechowski v. Murray*, 345 Pa.Super. 138, 497 A.2d 1342 (1985) (ordering remand where trial court dismissed claim against defendant on a basis not raised by defendant); *Matter of Sla-*

*vonic Literary Ass'n*, 62 Pa.Cmwlth. 546, 436 A.2d 1257 (1981) (remanding to trial court after trial court reversed an order of Liquor Control Board for lack of prosecution without a motion or notice to either party); *Edward M. v. O'Neill*, 291 Pa.Super. 531, 436 A.2d 628 (1981) (finding error in lower court's issuance of an injunction *sua sponte* after denial of class certification); *see also Commonwealth v. Pachipko*, 450 Pa.Super. 677, 677 A.2d 1247 (1996) (disapproving of trial court's conduct in granting defendant's petition for *habeas corpus* based on an issue not raised by either party). For the reasons that follow, we disagree.

This Court previously recognized the valuable private interests represented by PennDOT's agent and messenger agreements, which are in the nature of licenses. As such, the Agreements may not be revoked without due process. *Moore I.*

 Due process is a flexible concept and imposes only such safeguards warranted by the situation. *D.Z. v. Bethlehem Area Sch. Dist.*, 2 A.3d 712 (Pa.Cmwlth. 2010). Although notice is essential to due process, due process notice requirements are non-technical. *Pa. Bankers Ass'n v. Dep't of Banking*, 981 A.2d 975 (Pa. Cmwlth.2009). Adequate notice for purposes of procedural due process consists of, at a minimum, a sufficient listing and explanation of the charges. *Dunn v. Dep't of Transp., Bureau of Driver Licensing*, 819 A.2d 189 (Pa.Cmwlth.2003). The meaningful opportunity to be heard requirement of procedural due process entails an appropriate hearing. *Dep't of Transp., Bureau of Driver Licensing v. Clayton*, 546 Pa. 342, 684 A.2d 1060 (1996). In assessing an alleged denial of procedural due process, demonstrable prejudice is a key factor. *D.Z.*

Here, based on Business' assertions that the hearing officer improperly invoked the

good cause provisions of the Agreements on his own motion, the Secretary issued an order reopening the record to afford the parties an opportunity to present evidence on this issue. The Secretary's order states:

> AND NOW, this 15th day of June, 2010, on consideration of the Exceptions of [Business], *it is hereby ordered that the record is reopened* as to the following questions:
>
> (1) Is the agency head's discretion limited to adjudicating whether the action taken by the staff (termination of the agreements) is supported on the grounds asserted by the staff (fraudulent acts)?
>
> (2) *Is there "good cause" for terminating the agreements as recommended by the hearing officer?*
>
> *The hearing officer shall promptly conduct any further proceedings necessary to fully address these questions* and, within 60 days, the Administrative Docket Clerk shall forward to me the record of any additional evidence and/or argument submitted by the participants.

Sec'y Order, 06/15/10 (emphasis added).

Business' arguments that the hearing officer violated its right to due process by deciding the case on the issue of good cause ignore this order from the Secretary, which reopened the record on this very issue. Even if the hearing officer erroneously decided the case based on the good cause provisions, any defect was cured when the Secretary ordered reopening of the record and invited Business to participate in a subsequent hearing and present evidence or argument on the issue of good cause. *See Izzi v. Workers' Comp. Appeal Bd. (Century Graphics, Inc.)*, 747 A.2d 1289 (Pa.Cmwlth.2000) (remand may cure alleged procedural defect). However, Business declined to do so.

Moreover, after the Secretary ordered the record reopened, Business did not explain what evidence it wished to present that would have differed from the evidence it presented at the initial hearing.[3] This is not surprising given that the factual averments underlying the termination notices remained unchanged at all times.[4] At no time did PennDOT seek to add new factual allegations to its notices.

In its brief to this Court, Business does not identify any additional evidence it wished to present on the good cause issue. Absent such explanation, we are unable to discern any prejudice Business suffered as a result of the procedure that occurred below. *See D.Z.*

The Secretary's order reopening the record provided Business with notice and an opportunity to be heard on the issue of good cause and cured any alleged defect in procedure. The Secretary's remand order, which remedied any procedural defect claimed by Business, distinguishes this case from the authority relied on by Business. *Compare Mifflin; White; Fairview*

---

**3.** *See* Certified Record (C.R.), Item # 21 (Business' correspondence, 07/02/10); *see also* C.R., Item # 23 (PennDOT's correspondence, 07/07/10, detailing additional presentation); Item # 22 (Business' correspondence, 07/07/10, objecting to additional proceeding); Item # 24 (Hearing Officer's Notice, 07/07/10, closing the record and forwarding it to Secretary).

**4.** More specifically, the original notices stated the undisputed fact that Business' employees accepted invalid driver's licenses as proof of identification on multiple occasions. For each problematic transaction, the notices specified the date of processing, customer, and make, year and vehicle identification number for the vehicle involved. C.R., Item # 10, N.T., 01/22/10, at 39–40; Exs. C, D. These factual allegations remained the same at all relevant times.

*Sch. Dist. v. Dep't of Educ.*, 54 Pa.Cmwlth. 75, 419 A.2d 823 (1980).

Furthermore, Business cites no authority that would justify the relief it seeks, reversal of the Secretary's order and reinstatement of the Agreements. Indeed, the cases cited by Business support the proposition that a remand is proper where the proceedings are tainted by improper procedures. *See MacGregor; Wojciechowski; Edward M.; Slavonic Literary Ass'n.* Thus, even if persuaded by Business' arguments, a remand, not reversal, is the proper remedy. Here, however, Business already received that remedy.

## II.

■ Business next argues the facts do not justify termination of the Agreements based on good cause. Because the term good cause is not defined in the Agreements, in the relevant provisions of the Vehicle Code,[5] or in PennDOT's regulations, Business asserts it should be interpreted according to its common usage. While not disputing that its employees accepted invalid identifications in connection with the processing and issuance of vehicle registrations, Business contends a finding of good cause required a showing that its employees knowingly or intentionally accepted the invalid identifications. Busi-

ness acknowledges its employees did not comply with training requirements; however, it argues PennDOT's training materials and classes inadequately addressed the problems found in the audit. Again, we disagree.

Both Agreements specify certain prohibited conduct and associated penalties. In addition, the Agreements provide: "[Penn-DOT] may also terminate th[e] Agreement[s] at any time *for good cause shown.*" Agent Agreement ¶ 33; Messenger Agreement ¶ 30 (emphasis added). The "good cause" provisions enumerate certain examples of prohibited conduct that do not apply here; however, the express language of these provisions indicates the examples are illustrative, not exhaustive.[6] *Id.* Notably, the Agreements are silent on the meaning of "good cause."

■ When interpreting a contract, a court should afford undefined terms their ordinary meaning. *Kripp v. Kripp,* 578 Pa. 82, 849 A.2d 1159 (2004); *Pines Plaza Bowling, Inc. v. Rossview, Inc.,* 394 Pa. 124, 145 A.2d 672 (1958) (using dictionary definition to ascertain plain meaning of contract language). Black's Law Dictionary defines good cause as "[a] legally sufficient reason." BLACK'S LAW DICTIONARY 235 (8th ed.2004).

---

5. *See* 75 Pa.C.S. § 102 (definitions); 75 Pa. C.S. §§ 7501–7509 (regarding messenger and agent services).

6. The good cause provision in the Agent Agreement states:

> [PennDOT] may also terminate this agreement at any time for good cause shown, including, but not limited to, misrepresentation or fraud in the Contractor's application which formed the basis for this contract, or if the agent service is operated, managed, controlled or affiliated with a person who has been convicted of a felony involving dishonesty or breach of trust, who has had an agent, card agent, messenger service, or on-line messenger contract terminated by

[PennDOT] in the past, or who would be ineligible to be authorized to engage in providing agent services.

Agent Agreement, ¶ 33; N.T., Ex. A.

Similarly, the good cause provision in the Messenger agreement states:

> [PennDOT] may also terminate this agreement at any time for good cause shown, including, but not limited to, misrepresentation or fraud in the Contractor's application which formed the basis for this contract, or if the agent service is operated, managed, controlled or affiliated with a person who would be ineligible to be authorized to engage in providing agent services.

Messenger Agreement, ¶ 30; N.T., Ex. B.

Applying the plain meaning of the term "good cause" to the facts presented, the Secretary explained (with emphasis added):

*Detecting and rejecting fake licenses displayed in the process of vehicle registration is a basic responsibility that is inherent in that [sic] status of an agent and clearly something that the Department has a right to expect its agent will take seriously and discharge properly.* Agents have an obligation to exercise due care in this process, and the standard of care is not subjective and is not limited to that which is specifically taught or communicated to them by the Department. *While an agent exercising due care might not detect a sophisticated forgery in the absence of specialized training, common sense and basic competence suggest that the agent has an obligation (1) to possess general knowledge of the requisites of a valid license and (2) to examine a license for defects that should be apparent to a person that holds the status of agent for vehicle registration services.*

*Here the record indicates that some of the signs of invalidity may have been somewhat esoteric, but other signs, such as the inconsistent issue and expiration dates and the lack of signatures, should have been apparent to any person that holds the status of agent for vehicle registration services.* Indeed, one who seeks to obtain or retain that status, while disclaiming the obligation to know that a license is valid for only four years and is not valid without a signature, undermines the premise that he "is qualified to perform the necessary agent services." Agent Service Agreement at 1. *The evidence here demonstrates that [Business] has not exercised the degree of responsibility that the Department has every right to expect from its agents and messengers, and this lack of due care shows good cause for termination.* Further, although [Business'] employees have undergone some neglected training since the audit and termination of the agreements, *the terminations were clearly justified to protect the interests of the Department and the public it serves from the type of serious fraud that occurred, in part, because of [Business'] careless conduct.*

Sec'y Op., at 8. We discern no error in the Secretary's analysis.

More specifically, the Secretary's findings regarding Business' conduct in failing to detect and reject false driver's licenses in connection with the processing and issuance of registration documents are adequately supported by the record. Sec'y Op., F.F. Nos. 6–12, 20(a)-(k); N.T. at 17–36, 46, 49, 53–54, 60–63, 67–68, 70–71, 78–79, 114; Exs. A, F–O, P4–6. In turn, these findings support the Secretary's determination that PennDOT had "good cause" or a "legally sufficient reason" for terminating the agreements.

Further, we reject Business' reliance on cases that it contends stand for the proposition that, in order to prove good cause, PennDOT had to prove Business' employees knowingly or intentionally accepted invalid identifications. *See Stuyvesant Ins. Co. v. Keystate Ins. Agency,* 420 Pa. 578, 218 A.2d 294 (1966); *Dep't of Corr. v. Unemployment Comp. Bd. of Review,* 943 A.2d 1011 (Pa.Cmwlth.2008); *Cohen v. Mut. Benefit Health & Accident Ass'n,* 174 Pa.Super. 630, 101 A.2d 137 (1953).

In *Stuyvesant* and *Cohen,* the Courts explained that insurance agency contracts were cancellable "for cause ... *where the cause is action inimical to the insurer.*" *Stuyvesant,* 420 Pa. at 583, 218 A.2d at 297; *Cohen,* 101 A.2d at 138 (emphasis added). In both cases, the Courts affirmed termination of the contracts based

on supported findings that the conduct at issue met this standard.

Here, the operative provisions of the Agreements allow termination for "good cause shown." The Agreements do not require the cause to be "inimical," or "adverse often by reason of hostility or malevolence." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 600 (10th ed.2001). The absence of such language in the Agreements renders *Stuyvesant* and *Cohen* inapposite.

We also reject Business' reliance on our decision in *Department of Corrections*, an unemployment compensation case. There, we considered whether a corrections officer's fear of retaliation constituted good cause for his failure to intervene in an assault on an inmate. We stated that in the context of a willful misconduct case, once an employer proves it terminated a claimant for willful misconduct, the claimant may prove he had good cause for his actions. We explained "good cause" is established "where the action of the employee is justifiable or reasonable under the circumstances." *Id.* at 1015 (citation omitted). Ultimately, we held the corrections officer's fear of retaliation was not justified given his clear duty to protect inmates.

Contrary to Business' suggestions, in *Department of Corrections* this Court did not impose a "knowing" or "intent" requirement in discussing the issue of good cause. Thus, *Department of Corrections* does not support Business' assertions.

### III.

 As a final issue, Business argues the Secretary abused his discretion in upholding termination of the Agreements as the penalties for Business' conduct. Busi-

ness advocates the appropriate penalty, if any, is a written warning. In support, it references the Agreements' first offense provisions for specific activities related to deficiencies in processing paperwork. *See* N.T., Ex. A (Agent Agreement) ¶ 29(51); N.T., Ex. B (Messenger Agreement) ¶ 27(27).[7] Business asserts a reviewing court may modify a sanction imposed by an agency or licensing board if the sanction is unduly harsh. *Givnish v. Bd. of Funeral Dirs.*, 134 Pa.Cmwlth. 146, 578 A.2d 545 (1990); *Storch v. State Bd. of Vehicle Mfrs., Dealers & Salespersons*, 132 Pa.Cmwlth. 240, 572 A.2d 819 (1990).

 In general, the penalties imposed by an administrative tribunal are within its judgment absent abuse of discretion. *Givnish; Storch.* This Court will not substitute its discretion for that of an administrative body absent "a manifestly unreasonable exercise of judgment." *Burnworth v. State Bd. of Vehicle Mfrs., Dealers & Salespersons*, 139 Pa.Cmwlth. 21, 589 A.2d 294, 296 (1991).

Here, the Secretary found Business did not properly perform fundamental contractual duties. Sec'y Op., at 7. Thus, the Secretary determined PennDOT proved good cause for terminating the Agreements. The Agreements expressly provide for termination in these circumstances. Because the Secretary's findings are supported by the record and his conclusions are in accordance with applicable law, the decision regarding the appropriate penalty is committed to the Secretary's sound discretion. By imposing the penalties specifically contemplated by the

---

**7.** These provisions state "[t]he agent service has issued a temporary registration to an applicant without proper documentation" and "[t]he messenger service has repeatedly failed to ensure proper execution of documents or failed to ensure that all documents necessary to complete the paperwork was submitted to the Department for processing." Agent Agreement ¶ 29(51); Messenger Agreement ¶ 27(27); *see* N.T., Exs. A, B.

Agreements, the Secretary did not abuse his discretion.

We also reject Business' assertions that the Secretary should have imposed written warnings based on other provisions of the Agreements that involve proscribed conduct not at issue here. As noted by the Secretary, even if these provisions applied, written warnings would not be an appropriate penalty. Business' assertions to the contrary ignore the graduated penalties for repeat violations of Paragraph 29(51) of the Agent Agreement and Paragraph 27(27) of the Messenger Agreement.

Specifically, as to the Agent Agreement, a second violation of Paragraph 29(51), subjects the violating party to a three-month suspension. N.T., Ex. A ¶¶ 29(52). As for the Messenger Agreement, Paragraph 27(27) imposes the following penalties: written warning for a first offense; three-month suspension for a second offense, and termination for a third offense. N.T., Ex. B ¶¶ 27(27), 27(28), 28(7).

In *Abats (North Phila.) Auto Tags v. Department of Transportation, Bureau of Motor Vehicles,* 156 Pa.Cmwlth. 333, 627 A.2d 265, 267 (1993), which also involved an agent agreement with PennDOT, this Court explained: "Since [PennDOT] may consider multiple violations at one time and a violation supported by substantial evidence is an offense, [PennDOT] may impose separate sanctions for each offense." Thus, even if numerous offenses are uncovered in a single audit, PennDOT may impose separate penalties for each violation. *Id.*

As noted above, the audit here revealed Business committed 10 separate violations. The Agreements state "[s]econd and subsequent offenses will be determined on the basis of previous offenses of the same nature committed within a three (3) year period." *See* ¶ 29 of the Agent Agreement; ¶ 27 of the Messenger Agreement.

All 10 of the violations occurred within a three-year period. Based on *Abats,* each violation could subject Business to a separate sanction. As such, under the graduated penalty provisions for repeat violations of Paragraph 29(51) of the Agent Agreement and Paragraph 27(27) of the Messenger Agreement, a written warning would not be appropriate.

For all the foregoing reasons, we affirm.

Senior Judge KELLEY dissents.

### ORDER

**AND NOW,** this 4th day of May, 2011, the order of the Secretary of the Department of Transportation, dated August 2, 2010, is **AFFIRMED.**