Janet GUTMAN, t/d/b/a World Insurance Auto Tags, Petitioner,

v.

## DEPARTMENT OF TRANSPORTATION, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 28, 2011.

Decided March 18, 2011.

Peter B. Foster, Harrisburg, for petitioner.

Terrance M. Edwards, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Janet Gutman, t/d/b/a World Insurance Auto Tags (Gutman), petitions for review of the September 9, 2010, order of the Secretary of the Department of Transportation (Secretary), which denied Gutman's exceptions and adopted the Department of Transportation's (DOT) proposed report, making final Gutman's termination by DOT's Bureau of Motor Vehicles (BMV) for fraudulent recordkeeping. We affirm.

Gutman entered into an agreement to provide agent services for the issuance and processing of vehicle registration documents and fees with DOT (Agent Services Agreement or Agreement). (Findings of Fact, No. 1.) The BMV was responsible for overseeing and monitoring Gutman's performance of the Agreement. (Findings of Fact, No. 2.) The BMV conducted an audit of Gutman's office on November 12, 2009, and inspected Gutman's files for the previous three years. (Findings of Fact, Nos. 3–4.) The audit revealed that, in twenty-nine transactions, Gutman accepted as proof of identity non-government-issued identifications, altered identifications and an international license. (Findings of Fact, No. 5.)

On November 30, 2009, the BMV sent Gutman a notice terminating her Agent Services Agreement. (Findings of Fact, No. 6.) On January 8, 2010, the BMV held a meeting with Gutman to discuss the results of the audit and allow Gutman to present any mitigating circumstances. (Findings of Fact, No. 7.) By letter mailed February 8, 2010, the BMV notified Gutman that the termination would stand. (Findings of Fact, No. 8.) Gutman appealed the termination of her Agreement, and DOT held a hearing on April 6, 2010. (Findings of Fact, No. 9.)

DOT set forth the following findings from the testimony and exhibits that were presented:

a. The Agent Services Agreement contained provisions requiring that employees engaged in providing agent services receive regular training.

b. Since at least 2006, the Bureau's periodic bulletins and training materials for agent services have included information on the requirements for customer addresses and acceptable proof-of-identification documents.

c. According to the bulletins and training materials, agents may not issue motor vehicle documents to an out-of-state address, and non-government issued identification is not acceptable proof of identification.

d. Gutman knew that agents could not issue motor vehicle documents to an out-of-state address and that non-government issued identification was not acceptable proof of identification.

e. Gutman's records contained non-government issued identification in 29 transactions in which the customer purported to have a Pennsylvania address.

f. When the auditors showed Gutman the questionable forms of identification, she first indicated that she did not look at things like that.

g. When an auditor pointed out that some of her customers were coming from "extremely long distances" to get their paperwork processed by her, she admitted she had accepted these forms of identification but that "she was not the only one"—others also did.

h. When asked what she meant by that statement, she produced a Russian language "yellow book" in which, she claimed, other businesses advertised that they accepted "all kinds" of identification.

i. During the audit, Gutman also said that she had been told in training two years earlier that she could accept "non-government issued" identification but that, when she attended Department training in Harrisburg on November 9, 2009, she learned that she could not accept such identification.

j. In each of the questioned transactions, Gutman accepted and recorded a "Pennsylvania ID" card with features similar to those of official identification cards such as the Driver Licenses and Non–Driver Photo ID cards issued by the Department (although the cards all contain an indication that they are not government issued).

k. Gutman knew that the "Pennsylvania ID" was not government issued.

l. Gutman used the "Pennsylvania ID" to complete, notarize, and submit "Computerized Vehicle Applications" (Form SA–2C).

m. Gutman's records also contained numerous incomplete MV-3 Forms ("Motor Vehicle Verification of Fair Market Value by the Issuing Agent") for cars with purchase prices below their apparent market value.

n. The Bureau determined that Gutman's contract was subject to termination under Paragraph 30(1):

> The agent service, one of its owners, officers or employees, has committed a fraudulent act including the fraudulent keeping of records, or the fraudulent completion of an application submitted to the Department, or has failed to submit to the Department completed applications and fees and taxes due the Commonwealth in connection with the issuance of the temporary cards or plates.

(Proposed Report, Findings of Fact, No. 10(a)-(n).) DOT set forth that the Agreement provides for termination for "fraudulent recordkeeping" as well as for "good cause shown." (Proposed Report at 4; Agent Services Agreement, ¶ 30, 33.) DOT further stated:

> [T]he volume of her transactions with the holders of non-government issued cards and her frequent failure to complete the fair market value verification suggests something more than mere inadvertence on her part. . . . [I]t is apparent that these were not aboveboard transactions, and it strains credulity to believe that Gutman was unaware of that. Thus, it is impossible to avoid the conclusion that she knowingly recorded transactions without proper proof-of-identification documents and intended to mislead the Department into believing that the "Computerized Vehicle Applications" (Form SA–2C) were correct.

(Proposed Report at 5–6.)

Further, DOT determined that Gutman could also have been terminated for "good cause shown," as she failed to exercise the degree of responsibility that DOT has the right to expect from its agents. (Proposed Report at 6.) DOT made the following conclusions of law:

1. The Department may terminate the agreement with Gutman for a "fraudulent act including the fraudulent keeping of records, or the fraudulent completion

of an application submitted to the Department" under Paragraph 30(1) or "for good cause shown" under Paragraph 33.

2. An agent who knowingly records transactions without proper proof-of-identification documents and intends to mislead the Department into believing that the "Computerized Vehicle Applications" (Form SA–2C) are correct commits a fraudulent act within the meaning of Paragraph 30(1).

3. The evidence demonstrates that Gutman knowingly recorded transactions without proper proof-of-identification documents and intended to mislead the Department into believing that the "Computerized Vehicle Applications" (Form SA–2C) were correct.

4. The evidence also demonstrates good cause for termination because Gutman has not exercised the degree of care and responsibility that the Department has a right to expect from its agents.

(Proposed Report, Conclusions of Law, Nos. 1–4.) DOT affirmed the BMV's termination of Gutman's Agent Services Agreement. Gutman filed exceptions to the proposed report, and, on September 9, 2010, the Secretary denied the exceptions and adopted and made final DOT's proposed report. Gutman now petitions this court for review.[1]

▉ Initially, Gutman contends that DOT erred in determining that she committed "fraudulent recordkeeping." The burden rests with DOT to show that its termination of the Agreement was proper. 67 Pa. Code § 491.10(b)(1). In determining whether Gutman committed fraudulent recordkeeping, it is "necessary to inquire whether the recordkeeping entry was false, entered intentionally and with the purpose of deceiving." *Department of Transportation, Bureau of Driver Licensing v. Midas Muffler Shop,* 108 Pa. Cmwlth. 199, 529 A.2d 91, 93 (1987).

Gutman contends that she does not fully understand spoken and written English and that she did not know the difference between government and non-government-issued identifications; thus, no intent was shown.[2] The testimony and evidence of record reveal that Gutman, who had been acting as an agent for seventeen years, attended the required service agent training classes and received the service bulletins periodically, thereby supporting DOT's finding that Gutman knew which forms of identification she could accept and which were unacceptable.

Further, Gutman contends that she did not make any false entries in the vehicle registration documents; thus, there can be no "fraudulent recordkeeping." The fraud, as stated by DOT, occurred when Gutman intentionally accepted non-government-issued identification cards as the form of identification for the specified transactions, with the purpose of deceiving DOT into believing that the applicants provided government-issued Pennsylvania identification. "An authorized ... agent

---

1. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

2. Gutman raises for the first time before this court the issue of not fully understanding spoken and written English; thus, there is no evidence of record to support this argument, and we will not address it here. Pennsylvania Rule of Appellate Procedure 1551(a) provides that "[r]eview of quasijudicial orders shall be conducted by the court on the record made before the government unit. No question shall be heard or considered by the court which was not raised before the government unit...." Pa. R.A.P. 1551(a).

may not issue a temporary registration card or plate if proper documentation is not complete and if information is not verified if required. This includes proof of ownership, ... proof of identity and other documentation that may be required." 67 Pa. Code § 43.10(h).

The record supports DOT's determination that Gutman knew the identification cards were not acceptable, took them as verification of identity, and included a copy of such information in the records, intending to mislead the BMV into believing the identification documents were proper.

Next, Gutman argues that, if we do find that she committed "improper" recordkeeping, the sanction should be a warning and not a suspension or termination. This issue is moot, as we have determined that DOT was correct in finding that Gutman committed "fraudulent" recordkeeping.

Finally, Gutman argues that there is insufficient record evidence to justify her termination for "good cause shown." It is unnecessary to address this argument, as fraudulent recordkeeping was shown, which, in and of itself, justifies the termination of the Agreement.

DOT's termination of the Agreement was proper. The Secretary did not err in denying Gutman's exceptions and adopting the proposed report, making final Gutman's termination by DOT for fraudulent recordkeeping.

Accordingly, we affirm.

### ORDER

AND NOW, this 18th day of March, 2011, the September 9, 2010, order of the Secretary of the Pennsylvania Department of Transportation in the above-captioned matter is affirmed.